UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BANKERS' BANK NORTHEAST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:12-cv-00127-GZS |
| | ) |
| EVERETT L. AYER, *et al.*, | ) |
| | ) |
| Defendants | ) |

**RECOMMENDED DECISION**

Bankers' Bank Northeast ("BBN") sued eight former directors of the Savings Bank of Maine Bancorp ("SBM") and SBM's president and CEO, Arthur C. Markos, in connection with a loan made by BBN to SBM.[1] BBN originally filed this case in the District of Connecticut, basing jurisdiction on diversity of citizenship pursuant to 28 U.S.C. § 1332(a) because BBN is a citizen of Connecticut, Markos and the directors (collectively, "defendants") are citizens of Maine, and the amount in controversy exceeds $75,000. (ECF No. 1 at 7-8.) The case was then transferred to the District of Maine (ECF Nos. 107, 108). BBN's complaint against the defendants alleges negligent misrepresentation and breach of the implied covenant of good faith and fair dealing pursuant to Connecticut law.[2] Markos has moved to dismiss (ECF No. 135), and the directors have moved for summary judgment (ECF No. 83). BBN indicates that it does not oppose the dismissal of its claims of breach of the implied covenant of good faith and fair dealing against these defendants (ECF No. 92 at 23; No. 137 at 17), and I recommend that the

---

[1]  BBN also sued SBM's accountant and auditor, Berry, Dunn, McNeil & Parker, but no motion regarding this defendant is currently pending.
[2]  The parties agree that Connecticut law applies. (ECF No. 83-1 at 8; No. 137 at 8; No. 141 at 4.) I conclude that Maine's choice of law provisions do in fact direct the application of Connecticut law to this case because BBN acted in reliance upon the defendants' representations in Connecticut, received the representations in Connecticut, performed under the contract in Connecticut, is chartered in Connecticut, and has its principal place of business in Connecticut. See Uncle Henry's Inc. v. Plaut Consulting Co., Inc., 399 F.3d 33, 42 (1st Cir. 2005).

Court dismiss those claims. However, as to the claims of negligent misrepresentation, I recommend that the Court deny both the motion to dismiss and the motion for summary judgment.

**FACTS**

The facts are generally not in dispute. In 2008, SBM sought to obtain a loan from BBN. SBM's treasurer, Anita Nored, submitted for BBN's inspection SBM's audited financial statements and loan review report for 2007, as well as a monthly profit summary as of June 2008. SBM's directors then signed a resolution authorizing Nored "to sign any and all documents with respect to" a loan of up to $20 million from BBN to SBM. (ECF No. 92-4 at 2.) The maximum amount sought represented nearly one quarter of SBM's total equity of approximately $79 million. (ECF No. 83-6 at 3.)

On September 16, 2008, BBN loaned SBM $18 million. Nored signed the loan agreement, which provided that SBM had not failed to disclose any material facts and that the documents she had submitted to BBN "present[ed] fairly the financial positions" of SBM, were prepared according to Generally Accepted Accounting Principles (GAAP), did not contain an untrue statement of material fact, and did not omit a material fact. (ECF No. 83-4 at 23.)

Soon thereafter, SBM experienced significant loan losses and was in danger of becoming insolvent. In early 2010, SBM underwent a restructuring and takeover led by Yorkshire Capital LLC. As part of that process, BBN agreed to reduce its loan principal to $9 million. BBN and SBM then signed an amended loan agreement. Section 9 of that agreement provided that BBN:

> hereby waives and releases . . . any and all other claims, liabilities or obligations of any kind or nature whether now existing or hereafter arising, which it . . . may have against [SBM] . . . including . . . any of the officers and directors of [SBM] on the date of the Original Loan Agreement . . . arising out of the negotiation, preparation, execution, delivery and performance of the Original Loan Agreement and Original Loan Note. It is agreed that the Original Loan Agreement and

>Original Note have been superseded . . . .  Notwithstanding the foregoing, and on the condition that the foregoing does not act in derogation of the following reservations, [BBN] hereby saves and reserves any and all claims, of any nature, against [SBM's] accountants or under [SBM's] directors' and officers' insurance policies in effect at the time of the issuance of the Original Loan Note.

(ECF No. 83-6 at 25.)  Section 10.9 of the agreement provided that it "embod[ies] the entire understanding and agreement between the parties hereto and thereto with respect to the subject matter hereof and thereof and supersede[s] all prior agreements, understandings and inducements, whether express or implied, oral or written."  (ECF No. 83-6 at 27.)

BBN originally filed this case on February 18, 2011.  (ECF No. 1.)  BBN claims that the defendants knowingly misrepresented SBM's financial position in order to obtain the $18 million loan.  BBN seeks to recover from the defendants personally the $9 million it lost during SBM's restructuring.

## MARKOS'S MOTION TO DISMISS

Markos moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss BBN's claim of negligent misrepresentation against him on grounds of (1) release, (2) waiver, and (3) failure to allege sufficient facts to state a plausible claim for relief.

**A. Legal Standard**

In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff so long as they are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery.  <u>Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.</u>, 524 F.3d 315, 320 (1st Cir. 2008).  To properly allege a claim in federal court, it is not enough merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (citing and quoting Twombly, 550 U.S. at 555).  However, "detailed factual allegations" are unnecessary.  Twombly, 550 U.S. at 555.

**B. Discussion**

  *1.    Release*

Markos first argues that BBN released him from its claim of negligent misrepresentation. He cites section 9 of the amended loan agreement, which provides that BBN "hereby waives and releases . . . any and all other claims" against "any of the officers and directors" of SBM.  (ECF No. 83-6 at 25.)  Because the complaint alleges that Markos was an officer and director of SBM, Markos contends that dismissal is required.  However, section 9 also provides that "[n]otwithstanding" the waiver and release, and "on the condition" that the waiver and release "does not act in derogation of the following reservations," BBN "hereby saves and reserves any and all claims . . . under [SBM's] directors' and officers' insurance policies . . . ."  (ECF No. 83-6 at 25.)  Markos argues in his reply that giving effect to the reservation clause would render the release clause meaningless.

To interpret a contract such as the amended loan agreement, Connecticut law provides that:

> [a] contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the

4

>language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous.

United Illuminating Co. v. Wisvest-Connecticut, LLC, 791 A.2d 546, 550, 259 Conn. 665, 670-71 (2002) (citations omitted).

I conclude that section 9 of the amended loan agreement is unambiguous because the language is clear and conveys a definite and precise intent. Section 9 indicates that claims against the officers and directors are released except for those that fall under the insurance policies. I must view the contract in its entirety and give effect to every provision. Markos advocates a reading of the release clause that would render the reservation clause meaningless. Dismissal is therefore not appropriate on the ground of release.[3]

### 2. *Waiver*

Markos next argues that BBN contractually waived its claim of negligent misrepresentation. "Waiver is the intentional relinquishment or abandonment of a known right or privilege." Pereira v. State Bd. of Educ., 37 A.3d 625, 649, 304 Conn. 1, 40 (2012). Markos cites section 10.9 of the amended loan agreement, which provides that it "supersede[s] all prior agreements, understandings and inducements . . . ." (ECF No. 83-6 at 27.) Markos contends that this section constitutes a waiver of claims under the original loan agreement.

Markos's argument again ignores the reservation clause in section 9 of the amended loan agreement. That agreement must be considered as a whole. BBN could not have intended to

---

[3] Markos also cites an argument regarding the expiration date of the directors' and officers' insurance policy made by the other director defendants in connection with the motion for summary judgment. (ECF No. 141 at 6-7.) I reject that argument in my discussion of that motion.

waive its claim while simultaneously reserving it. I therefore conclude that dismissal is not appropriate on the ground of waiver.

### 3. *Factual Allegations*

In his final argument, Markos challenges the sufficiency of the facts alleged in the complaint. He argues that the complaint focuses on SBM's actions and contains no allegations that he individually made any representations to BBN. Although he insists on individualized allegations, he does not offer any controlling legal authority for this proposition other than Iqbal and Twombly, neither of which imposes a requirement of individualized allegations in a claim of negligent misrepresentation.

In Connecticut, "an action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." Nazami v. Patrons Mut. Ins. Co., 910 A.2d 209, 213, 280 Conn. 619, 626 (2006). Connecticut law further provides that:

> an officer of a corporation does not incur personal liability for its torts merely because of his official position. Where, however, an agent or officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to third persons injured thereby. . . . Thus, a director or officer who commits the tort or who directs the tortious act done, or participates or operates therein, is liable to third persons injured thereby, even though liability may also attach to the corporation for the tort.

Sturm v. Harb Dev., LLC, 2 A.3d 859, 866-67, 298 Conn. 124, 132 (2010) (citation omitted).

In opposing Markos's argument, BBN cites paragraph 21 of the complaint, which alleges that Markos "exercised control over SBM" as president, CEO, and as a director.[4] (ECF No. 1 at

---

[4] Markos argues that I should disregard the allegation that he "exercised control over SBM" because it is a legal conclusion. (ECF No. 141 at 4 n.2.) I decline to disregard the allegation because it is consistent with Markos's position as president, CEO, and a director of SBM. The observation that a person holding those titles exercises some measure of control over the company is not necessarily a legal conclusion.

8.) As to the first two elements of negligent misrepresentation, the complaint alleges that the "SBM Defendants," one of whom is Markos, made specific false statements to BBN and that they knew or reasonably should have known that the statements were false. (ECF No. 1 at 4-5, 10, 14, 15.) As to the third and fourth elements of the claim, the complaint alleges reasonable reliance and resulting pecuniary harm. (ECF No. 1 at 20-22.)

I conclude that these allegations are sufficient to allow a reasonable inference that Markos, as one of the "SBM Defendants" referenced in the complaint, is liable for the misconduct alleged. The complaint does not seek to hold Markos liable "merely because of his official position." Id. at 866. Instead, the complaint alleges his participation in the tort as one of the "SBM Defendants." Markos's attempt to raise BBN's pleading requirements is unsupported. BBN has satisfied the standard enunciated in Iqbal and Twombly.[5]

## THE DIRECTORS' MOTION FOR SUMMARY JUDGMENT

The directors move for summary judgment on the grounds that (1) they did not make any false representations and had no personal involvement in the loan transaction, (2) BBN waived its claim, and (3) BBN released them from liability.

**A. Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

---

[5] BBN attaches exhibits in support of its opposition and cites them in making its argument. Markos argues in his reply that the exhibits should be stricken because consideration of a motion to dismiss is limited to the complaint and documents referenced therein, such as the loan agreements at issue. (ECF No. 141 at 2 & n.1.) Although I decline to strike the exhibits, I have not considered them in recommending this decision on the motion to dismiss.

7

>stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).[6] Because many factual disputes depend on circumstantial evidence, to determine whether a fact is established, circumferentially, the Court will draw all reasonable inferences in favor of the non-movant that can be supported by the record sources cited. However, where the non-movant bears the burden of proof, the party still must present "definite, competent evidence" from which a reasonable person could find in its favor. United States v. Union Bank for Sav. & Inv. (Jordan), 487 F.3d 8, 17 (1st Cir. 2007). If the Court's guided review of the record reveals evidence sufficient to support a judgment in favor of the non-moving party on one or more claims, then there is a trial-worthy controversy and summary judgment must be denied to the extent there are supported claims. Unsupported claims are properly dismissed. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

**B. Discussion**

### *1. The Directors' Involvement in the Transaction*

The directors first argue that they did not create or provide the allegedly false documents to BBN and had no personal involvement in the loan transaction. They contend that SBM's treasurer, Nored, and the accounting firm were responsible for any misrepresentations, and they cannot be held liable for the actions of others.

In opposition, BBN cites the directors' resolution authorizing Nored to sign all of the loan documents, as well as the large size and importance of the transaction to SBM, as evidence

---

[6] Because the motion for summary judgment was fully briefed in the District of Connecticut, I omit citations to D. Me. Loc. R. 56 and find that any noncompliance with that Local Rule should be disregarded.

of the directors' involvement. BBN argues that the directors knew that the financial documents provided to BBN by Nored were unreliable because the accounting firm had previously advised the directors of a "material weakness" in their "allowance for loan loss methodology." (ECF No. 94 at 3.) BBN maintains that there is a question of fact as to whether the directors ordered Nored to make false representations to BBN; although the directors denied doing so, they have not supplied affidavits to that effect. BBN states that it still needs to depose Nored and the directors and also must continue to review voluminous documents. On April 30, 2012, I granted the parties' joint motion to amend the scheduling order, which now provides that discovery is not due until December 28, 2012. (ECF Nos. 122, 123, 124.)

I agree with BBN that material facts regarding the directors' involvement in the loan transaction remain in dispute. I reach this conclusion by drawing all reasonable inferences in favor of BBN and observing that BBN has presented sufficient evidence from which a reasonable person could find in its favor. BBN has documented the directors' resolution authorizing the loan, the large size and importance of the transaction, and the accounting firm's notice to the directors of a "material weakness" that existed in SBM's financial documents prior to the loan transaction.[7] I also note that the discovery period has not closed, and I find that it would be premature to foreclose BBN's opportunity to pursue further discovery that may help prove BBN's claim. For all of these reasons, summary judgment is not warranted on the ground that the directors allegedly lacked involvement in the loan transaction.

---

[7] The directors argue that BBN failed to file a required affidavit to support its opposition to summary judgment because of the need for further discovery. (ECF No. 96 at 6-7.) However, such an affidavit or declaration is necessary when the non-movant "cannot present facts essential to justify its opposition . . . ." Fed. R. Civ. P. 56(d). I conclude that BBN has presented facts essential to justify its opposition, and therefore no affidavit is needed.

### *2.  Waiver*

The directors next argue that BBN waived its claim and cite in support the amended loan agreement, which "amends, restates and supersedes in its entirety" the original loan agreement. (ECF No. 83-6 at 19.)  Like Markos, the directors also rely on section 10.9 of the amended loan agreement, which provides that it "supersede[s] all prior agreements, understandings and inducements . . . ."  (ECF No. 83-6 at 27.)  The directors further rely on a similar provision in the original loan agreement, which they contend waived any claims based on the financial documents submitted by Nored to BBN prior to the execution of the agreement.  In opposition, BBN cites the reservation clause in section 9 of the amended loan agreement.

As I explained in considering Markos's motion to dismiss, Connecticut principles of contract law require me to consider the amended loan agreement as a whole and to give effect to all parts of it.  Applying those principles, Section 9 unambiguously waives and releases all claims against the directors except for those that fall under their insurance policies.  Although the amended loan agreement "supersedes" prior agreements, it does not supersede section 9 because section 9 is part of the amended loan agreement.

The directors also argue that the provisions they cite are "specific" while the reservation clause is "general."  Under Connecticut law, "[i]t is axiomatic that the more specific language in a contract prevails over the more general."  Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Investors, L.P., 905 A.2d 1214, 1225, 97 Conn. App. 541, 558 (2006).  I disagree with the directors' argument because the reservation clause specifically saves claims under the directors' and officers' insurance policies.  The provisions on which the directors rely appear to be more general than section 9.  In fact, the first of those provisions, explaining that the amended loan agreement "amends, restates and supersedes in its entirety," appears in the introductory

paragraph. (ECF No. 83-6 at 19.) See Zhang v. Commc'ns Enters., Inc., 866 A.2d 588, 594, 272 Conn. 627, 639 (2005) (language in introductory paragraph did not "overcome strong evidence of a contrary intent in [a] more specific provision"). Because the directors' argument fails to give effect to the reservation clause, I conclude that summary judgment is not warranted on the ground of waiver.

### 3. *Release*

The directors' last argument is that BBN released them from personal liability. They argue that I should interpret section 9 of the amended loan agreement in this manner. I decline to do so because there is no reference to release from personal liability in section 9. The language reserves "any and all claims, of any nature . . . under [SBM's] directors' and officers' insurance policies . . . ." (ECF No. 83-6 at 25.) That language does not suggest an exception for personal liability.

The directors also contend that BBN should have filed its claim with their insurer. The directors' and officers' policy in effect at the time of the original loan agreement covered the directors' negligence, errors, omissions, misstatements, misleading misstatements, and breach of duty, but it expired on July 10, 2009, and a claim under the policy had to have been filed with the insurer by that date. (ECF No. 83-9 at 9, 10.) BBN did not file this case until February 18, 2011. The directors thus argue that BBN's claim is time barred. BBN responds that any disputes regarding the directors' insurance coverage are irrelevant.

I agree with BBN because it was not a party to the insurance contract. It was the directors' obligation to maintain insurance coverage whenever needed, and it was their option to file a claim with their insurer upon receiving notice of BBN's lawsuit. The directors' arguments regarding release and the expiration of the policy fail.

## CONCLUSION

Based on the foregoing, I recommend that the Court dismiss BBN's claims of breach of the implied covenant of good faith and fair dealing as to Markos and the other SBM directors. I further recommend that the Court deny Markos's motion to dismiss and the directors' motion for summary judgment as to the remaining claims of negligent misrepresentation.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

July 17, 2012